IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROY JOSHUA GOUVEIA, #A3005875,<br><br>              Plaintiff,<br><br>        v.<br><br>CAPTAIN JACKIE M., et al.,<br><br>              Defendants. | Civil No. 20-00342 JAO-RT<br><br>ORDER DISMISSING COMPLAINT |

## ORDER DISMISSING COMPLAINT

Before the Court is pro se Plaintiff Roy Joshua Gouveia's ("Gouveia") prisoner civil rights complaint brought pursuant to 42 U.S.C. § 1983. ECF No. 7. Gouveia alleges that Defendants,[1] prison officials at the Maui Community Correctional Center ("MCCC"),[2] violated his constitutional rights by threatening his safety, denying him medical care, and retaliating against him. For the following reasons, the Complaint is DISMISSED with leave granted to amend.

---

[1] Gouveia names in their individual capacities Captain Jackie M., Sergeant Totau, Sergeant Hedge, Correctional Officer Gazman, and Correctional Officer Justin Kanakaole ("Kanakaole").

[2] Gouveia is currently incarcerated at the Halawa Correctional Facility ("HCF").

# I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[3]

Gouveia alleges that Jackie M., her "administrative team," and "S.O.R.T."[4] members entered Module B of the MCCC to find out why some inmates were not

---

[3] Gouveia's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] Although Gouveia does not say what the acronym S.O.R.T. abbreviates, it may be Special Operations Response Team.  If Gouveia chooses to file an amended pleading, he must define S.O.R.T.

"locking down" on the afternoon of March 11, 2019.  ECF No. 7 at 7 (Count I).

Gouveia claims that, at some point, Jackie M. said to someone, "I don't care if you

[guys] riot, the phones aren't going to be fixed, and besides that they don't even

make parts for that type of phone anymore."  *Id.*  Gouveia further claims that

Jackie M. also said "something" before she left Module B that caused "an even

greater up-roar."  *Id.*  According to Gouveia, a riot broke out in the MCCC at some

point after Jackie M. left Module B.  *Id.*

During the riot, Gouveia was locked in his cell.  *Id.* at 11 (Count IV).

Smoke and soot began entering Gouveia's cell through the air conditioning vent.

*Id.*  Gouveia claims that he pressed an emergency button in his cell, but no one

responded.  *Id.*  Gouveia further claims that when he looked out his cell window,

he did not see Kanakaole at the "control station" or Totau, who was the "unit

sergeant."  *Id.*

At some point "[a]fter the riot was done," Gouveia asked someone for

medical attention, but his request was denied.  *Id.* at 8 (Count II).  Gouveia was

told that he had to wait "for a Captain's order" before he could seek medical help.

*Id.*  At some point, Gouveia told Gazman that he was "pissing, [defecating], and

coughing out blood," and Gazman allegedly responded, "I [am] not calling

anybody for you."  *Id.*

4

A "few days" after the riot, Gouveia was transferred to the HCF. *Id.* at 9

(Count III). Gouveia spent five days at the HCF before he returned to the MCCC.

*Id.* At some point after returning to the MCCC, Gouveia allegedly asked Hedge

for a grievance form. *Id.* at 10. Gouveia claims Hedge denied his request saying

that it was "too late" and any grievance "would only come back moot." *Id.*

Gouveia seeks unspecified damages "for all injuries and injustices done to

[him]" and the costs for this action. *Id.* at 12. He also requests a medical

examination. *Id.*

## III. DISCUSSION

### A.    Legal Framework for Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a

right secured by the Constitution or laws of the United States was violated, and

(2) that the alleged violation was committed by a person acting under color of state

law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 requires a

connection or link between a defendant's actions and the plaintiff's alleged

deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v.

Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167

(9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional

right, within the meaning of section 1983, if he does an affirmative act, participates

in another's affirmative acts or omits to perform an act which he is legally required

to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

**B.     Eighth Amendment Claims**

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Amendment imposes duties on prison officials to "provide humane conditions of confinement."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials must ensure, therefore, that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See id.*

In general, a prison official violates the Eighth Amendment only when two requirements are satisfied:  (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the official must have acted with "deliberate indifference" to inmate health or safety.  *Id.* at 834 (citations omitted).  In order to be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "Deliberate indifference" requires more than negligence but does not require purpose or knowledge.  *See id.* at 836.  "[A] prison official cannot be found liable under the Eighth Amendment for

6

denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

### 1.    Threats to Safety

Gouveia alleges that Jackie M. threatened his safety by making certain statements prior to a riot at the MCCC, ECF No. 7 at 7, and Kanakaole and Totau threatened his safety by failing to respond when he pressed an emergency call button in his cell during the riot, *id.* at 11.

### a.    Jackie M.

Gouveia claims in Count I that Jackie M. told someone, "I don't care if you guys riot, the phones aren't going to be fixed, and besides that they don't even make parts for that type of phone anymore."  *Id.* at 7.  Gouveia further claims Jackie M. said "something" as she was leaving Module B, that supposedly caused "an even greater up-roar."  According to Gouveia, there was a riot in the MCCC at some point after Jackie M. left Module B.

Gouveia does not say what "problem" there was in Module B.  Nor does he explain how Jackie M. knew of and disregarded an excessive risk to his safety.  *See Mitchell v. Beard*, No. 1:17-cv-01032-SAB, 2017 WL 3620112, at *6 (E.D. Cal. Aug. 23, 2017) ("Plaintiff has not identified any threat to his safety that

7

Defendant . . . was aware of prior to the riot or any facts to demonstrate that any defendant was aware that the prison riot was going to occur[.]").  He does not say to whom Jackie M. made her alleged statement.  Nor does he say what Jackie M. allegedly said as she left Module B, who she said it to, or how it caused an uproar. Although Gouveia claims that the riot began at some point after Jackie M. left Module B, he does not allege that her statements caused the riot or that the riot even began in Module B.  Without a causal connection between Jackie M.'s statements and a threat to Gouveia's safety, he cannot state a claim under 42 U.S.C. § 1983.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) (explaining that, in a 42 U.S.C. § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury). Gouveia's claim against Jackie M. in Count I is DISMISSED with leave granted to amend.

### b.     Kanakaole and Totau

Gouveia claims in Count IV that Kanakaole "left his post" and Totau "was nowhere to be seen" during the riot.  ECF No. 7 at 7B.  "In emergency circumstances, such as those that exist during a prison uprising, where prison officials must weigh the competing institutional interests of ensuring the safety of staff, visitors, and inmates, and where life-and-death decisions must be made quickly," "the question whether the measure taken inflicted unnecessary and

wanton pain and suffering ultimately turns on whether [it] was [taken] in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) (citation omitted).

Gouveia fails to show that either Kanakaole or Totau acted with a sufficiently culpable state of mind.  Gouveia does not claim that either Kanakaole or Totau was aware of his emergency call or the smoke and soot entering his cell. Nor does Gouveia claim that Kanakaole or Totau should have been aware of these things.  Indeed, Gouveia acknowledges that there was an ongoing riot when he pressed the emergency call button.  Because of this, it is not surprising that Kanakaole and Totau may not have been immediately available to respond to Gouveia's call.  Gouveia does not say how long smoke and soot continued to enter his cell or how long he waited before someone responded.  Because Gouveia fails to allege that Kanakaole or Totau acted maliciously or sadistically for the very purpose of causing his harm, he fails to state a claim.  Gouveia's claims against Kanakaole and Totau in Count IV are DISMISSED with leave granted to amend.

### 2.    Medical Care

Gouveia alleges in Count II that he was denied medical care at some point "[a]fter the riot was done."  ECF No. 7 at 8.  To establish a claim of inadequate medical care, a prisoner must first show a serious medical need by demonstrating

that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (citation omitted). If a prisoner satisfies this requirement, he must then show that a prison official's response to the need was deliberately indifferent. *Id.* at 786 (citation omitted). "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Id.* (citations omitted). "To show deliberate indifference, the [prisoner] must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks omitted) (second and third alterations in original).

Gouveia claims that he was "pissing, [defecating], and coughing out" blood. Compl., ECF No. 7 at 8. While these symptoms reflect a serious medical need, Gouveia does not say when they began. He also fails to say how any prison official acted with deliberate indifference to this medical need. Gouveia claims that, "[a]fter the riot was done," he asked for medical attention. *Id.* Gouveia does not say, however, exactly when he initially asked for medical care, who he spoke with, or what he told this person. Moreover, Gouveia admits that his request was not denied outright; instead, he was told to wait for "a Captain's order." *Id.*

10

Gouveia does not say when he received medical care, if any. Gouveia fails to show, therefore, that any prison official acted with deliberate indifference to his initial request for medical care.

Gouveia further claims that he told Gazman of his medical issues, and Gazman responded by saying, "I [am] not calling anybody for you." *Id.* Again, Gouveia fails to say exactly when this alleged exchange occurred. Nor does Gouveia say if Gazman denied him medical care entirely or if this care was delayed. If Gouveia's care was only delayed, he does not say how long he had to wait. Gouveia's lack of medical care claim in Count II is DISMISSED with leave granted to amend.

**C.      First Amendment Claims**

Gouveia alleges in Count III that he was transferred to the HCF a few days after the riot as a suspected "leader" of the uprising. ECF No. 7 at 9. Five days later, Gouveia was returned to the MCCC. *Id.* Gouveia claims that Hedge refused to provide him with a grievance form after he returned to the MCCC. *Id.* at 10. The exact basis for Gouveia's claim is unclear. Although Gouveia wrote "due process" as the constitutional or other federal civil right violated by the defendant, *see* ECF No. 7 at 9 (question 1), he marked the box indicating that his claim involves retaliation. *See id.* (question 2).

11

To the extent Gouveia contends that he was denied due process because he should not have been transferred to the HCF, he fails to sate a claim because "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State[.]" *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983); *see also United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) (per curiam).

If Gouveia is arguing that his transfer to the HCF was an unconstitutional act of retaliation, nothing in the Complaint supports such a claim. A viable First Amendment retaliation claim within the prison context entails five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Gouveia fails to allege any facts suggesting that he was transferred to the HCF because of his protected conduct. Nor does Gouveia claim that the transfer chilled the exercise of his First Amendment rights. He fails, therefore, to state a First Amendment claim based on his transfer to the HCF.

Finally, to the extent Gouveia claims that Hedge violated his First Amendment rights by refusing to provide him with a grievance form, he must provide additional facts. "It is well established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances." *Brodheim v.*

12

*Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted).  Gouveia claims

Hedge refused him a grievance form because it was "too late" and any grievance

"would come back moot."  Because grievance forms must be submitted within

fourteen days of the complained-of action subject to certain extensions of time, *see*

*Kaimi v. Haw. Dep't of Pub. Safety*, Civil No. 13-00483 JMS/BMK, 2014 WL

12695694, at *2 (D. Haw. Mar. 18, 2014), Gouveia's statements that he was

"denied grievances on return back to Maui Jail" or that he had asked for the form

"[a]s I get back to Maui Community Correctional Center," are insufficient.

Gouveia must assert exactly when he asked Hedge for a grievance form in relation

to the specific events he wanted to address on the form.  Without this information,

it is impossible to know whether a timely grievance could have been filed.

Gouveia's First Amendment claim in Count III is DISMISSED with leave granted

to amend.

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with leave granted to amend.  Gouveia may

file an amended complaint on or before **November 23, 2020**, that attempts to cure

the deficiencies in his claims.  Gouveia may not expand his claims beyond those

already alleged herein or add new claims, without explaining how those new

claims relate to the claims alleged in the original Complaint.  Claims that do not

properly relate to his original pleading are subject to dismissal.

13

Gouveia must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.1; LR10.4. Claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012). If Gouveia fails to timely file an amended complaint that cures the deficiencies in his claims, this action may be dismissed and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).[5]

---

[5] Section 1915 (g) bars a civil action by a prisoner proceeding in forma pauperis:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## V.  **CONCLUSION**

(1)  The Complaint is DISMISSED for failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

(2)  Gouveia may file an amended pleading that cures the deficiencies in his claims on or before **November 23, 2020**.

(3)  The Clerk is directed to send Gouveia a blank prisoner civil rights complaint form so that he can comply with the directions in this Order if he chooses to amend his complaint.

(4)  If Gouveia fails to timely amend his pleadings or is unable to cure the deficiencies in his claims this suit may be AUTOMATICALLY DISMISSED without further notice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 22, 2020.



Jill A. Otake
United States District Judge

*Gouveia v. M., et al.*, Civil No. 20-00342 JAO-RT; ORDER DISMISSING COMPLAINT

15