IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROY JOSHUA GOUVEIA, #A3005875,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAPTAIN JACKIE M., *et al.*,<br><br>　　　　　Defendants. | Civil No. 20-00342 JAO-RT<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND |

**ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND**

Before the Court is Plaintiff Roy Joshua Gouveia's ("Gouveia") first amended prisoner civil rights complaint ("FAC") brought pursuant to 42 U.S.C. § 1983. ECF No. 16. Gouveia alleges that Defendants,[1] prison officials at the Maui Community Correctional Center ("MCCC"),[2] violated his civil rights by threatening his safety, denying him medical care, and refusing to provide him with a grievance form. For the following reasons, the FAC is DISMISSED in part with partial leave granted to amend.

---

[1] Gouveia names in their individual and official capacities Captain Jackie M., Sergeant Hedge, Sergeant Totau, Correctional Officer Gazman, and Correctional Officer Justin Kanakaole. ECF No. 16 at 1–3.

[2] Gouveia is currently incarcerated at the Halawa Correctional Facility ("HCF").

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[3]

Gouveia alleges in Count I that he was "locked down" in his cell on March 11, 2019, when Captain Jackie M., Sergeant Totau, and the Special Operations Response Team ("S.O.R.T.") entered Module B, having been called there after an unspecified number of inmates refused to "lock down" because the phones in the

---

[3] Gouveia's factual allegations are accepted as true. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

module were broken. ECF No. 16 at 6. These inmates were yelling, swearing, and threatening to riot and "burn this . . . place." *Id.* Jackie M. responded by allegedly saying, "I don't care if you guys riot, the phones aren't going to be fixed." *Id.* at 7. The inmates continued shouting and threatening to riot. *Id.* Jackie M. responded by allegedly saying, "I don't care if you guys don't lock down, me and the S.O.R.T. Team will come back firing if you guys aren't in your cells." *Id.* Jackie M. then left Module B. *Id.* At that point, Totau allegedly told the inmates, "Good you guys doing this. It's the only way you guys are going to get what you want." *Id.* Totau and the S.O.R.T. then left Module B. *Id.* Shortly thereafter, inmates barricaded the door to Module B, began "to break things," and set the barricade on fire. *Id.*

Gouveia alleges in Count II that Correctional Officer Kanakaole was assigned to Module B's "control station" on March 11, 2019. *Id.* at 8. Gouveia claims that Kanakaole was in the "control box" when the inmates ignited the barricade and smoke began entering his cell through an air vent. *Id.* The smoke burned Gouveia's throat and eyes, and his "lungs felt like exploding." *Id.* When Gouveia pressed the "emergency button" in his cell, however, no one responded. *Id.* According to Gouveia, Kanakaole had left his post. *Id.* When Gouveia looked through the window in his cell door, he saw Kanakaole and "a bunch of Corrections Officers just right outside." *Id.* Gouveia signaled to the officers that

he was having difficulty breathing, but none of them helped him. *Id.* An unidentified officer responded by allegedly saying, "Break your window if you want to breath[e]." *Id.* Gouveia remained in his smoke-filled cell "for what seemed to be 3–4 hours." *Id.* at 9.

Gouveia alleges in Count III that he was moved from his cell to the recreation yard approximately four hours after the riot started. *Id.* at 10. At that point, Gouveia asked Totau for medical care. *Id.* Gouveia told Totau that he was having difficulty breathing and his chest was "pretty sore." *Id.* Totau allegedly told Gouveia that he had "to wait for a Captain's Order." *Id.* According to Gouveia, he also asked unidentified prison officials for medical care during the next two days. *Id.* Gouveia claims that he received no medical care, despite his oral and written requests. *Id.* Approximately two days after the riot, Gouveia was transferred to the HCF. *Id.* at 10. And four days after that, Gouveia observed that his urine was pink and his feces was black, and he began to cough up what appeared to be "blood clots." *Id.* at 11. Gouveia informed an unidentified correctional officer of his symptoms and asked for medical care, but he received none. *Id.* The next day, Gouveia was transferred back to the MCCC. *Id.*

Gouveia alleges in Count IV that, upon returning to the MCCC, he told Correctional Officer Gazman about the color of his urine and feces, and that he was coughing up "blood clots." *Id.* at 12. As Gazman escorted Gouveia to a cell,

Gouveia requested medical care. *Id.* Gazman responded by allegedly saying, "I will do that for you." *Id.* As soon as Gouveia was in his cell, however, Gazman allegedly said, "I'm not calling anyone for you." *Id.* Over the next week, Gouveia continued to request medical care, but he received none. *Id.* at 12–13. According to Gouveia, his symptoms persisted for approximately five days. *Id.* at 13. Gouveia has not received any medical care for these symptoms. *Id.*

Gouveia alleges in Count V that when he returned to the MCCC, seven days after the riot, he asked Sergeant Hedge for a grievance form. *Id.* at 14. When Hedge asked Gouveia why he needed the form, Gouveia said that he wanted to submit a grievance about the riot and the lack of medical care he received. *Id.* Hedge allegedly told Gouveia that it was too late to file a grievance and refused to provide him with a grievance form. *Id.*

Gouveia seeks compensatory damages, punitive damages, the fees associated with this action, and injunctive relief "in the form of a medical examination to ensure there are no further problems." *Id.* at 15.

### III. DISCUSSION

**A.    Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state

law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

**B.   Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984). It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law. *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Nor does it bar suits for damages against state officials in

their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Gouveia names all Defendants in their individual and official capacities.  *See* ECF No. 16 at 1–3.  To the extent Gouveia seeks damages from state officials in their official capacities, those claims are barred by the Eleventh Amendment and DISMISSED with prejudice.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)).  The Eleventh Amendment does not bar Gouveia's claims for damages against Defendants in their individual capacities.  *See Hafer*, 502 U.S. at 30–31.  Nor does it bar his request for injunctive relief.  *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) ("Under the *Ex parte Young* exception to that Eleventh Amendment bar, a party may seek prospective injunctive relief against an individual state officer in her official capacity." (citation omitted)).

C.  **Eighth Amendment Claims**

The Eighth Amendment prohibits "cruel and unusual punishments."[4]  U.S. Const. amend. VIII.  The Amendment imposes duties on prison officials to

---

[4]  Unlike in the original Complaint, *see* ECF No. 7, Gouveia cites both the Eighth Amendment and the Fourteenth Amendment in the FAC, *see* ECF No. 16 at 6, 8, 10, 12.  The Eighth Amendment prohibits cruel and unusual punishment of convicted prisoners, whereas the Fourteenth Amendment prohibits all punishment

(continued . . . )

"provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials must ensure, therefore, that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See id.*

In general, a prison official violates the Eighth Amendment only when two requirements are satisfied:  (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the official must have acted with "deliberate indifference" to inmate health or safety.  *Id.* at 834 (citations omitted).  In order to be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "Deliberate indifference" requires more than negligence but does not require purpose or knowledge.  *See id.* at 836.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

---

(. . . continued)
of pretrial detainees. *See Vazquez v. County of Kern*, 949 F.3d 1153, 1163–64 (9th Cir. 2020).  Gouveia does not allege that he was a pretrial detainee at the time of the riot.  The Court therefore analyzes his conditions-of-confinement claims under the Eighth Amendment.

### 1. Threats to Safety

Gouveia alleges in Count I that Jackie M. and Totau threatened his safety by making certain statements to inmates prior to a riot at the MCCC. ECF No. 16 at 6–7. Gouveia further alleges in Count II that Kanakaole threatened his safety by failing to respond to his pleas for help during the riot. *Id.* at 8–9.

### a. Captain Jackie M. and Sergeant Totau

Gouveia alleges in Count I that Captain Jackie M. and Sergeant Totau were called to the module where he was locked down in his cell because other inmates "wouldn't lock down." *Id.* at 6. These inmates were upset because the phones in the module were broken. *Id.* The inmates were yelling, swearing, and threatening to riot and "burn this . . . place." *Id.* Jackie M. responded by allegedly saying, "I don't care if you guys riot, the phones aren't going to be fixed." *Id.* at 7. This resulted in more shouting and additional threats to riot by the inmates. *Id.* Jackie M. then allegedly said, "I don't care if you guys don't lock down, me and the S.O.R.T. Team will come back firing if you guys aren't in your cells." *Id.* After Jackie M. left the module, Totau allegedly told the inmates, "Good you guys doing this. It's the only way you guys are going to get what you want." *Id.* Soon after Totau left the module, the prisoners barricaded the door and set the barricade on fire. *Id.* Liberally construing the FAC, Gouveia states in Count I plausible threat-to-safety claims against Jackie M. and Totau, and they may proceed.

### b. Correctional Officer Kanakaole

Gouveia alleges in Count II that Correctional Officer Kanakaole was in the "control box" when inmates started the fire and smoke began entering his cell. *Id.* at 8. After Gouveia pressed the "emergency button" in his cell, however, no one responded. *Id.* When Gouveia looked through the window in his cell door, he saw Kanakaole with "a bunch of Corrections Officers" just outside. *Id.* Gouveia signaled to the officers that he could not breathe. *Id.* Kanakaole and the other officers did not help Gouveia. *See id.* Instead, one of the officers responded by allegedly saying, "Break your window if you want to breath[e]." *Id.* According to Gouveia, Kanakaole left him in his smoke-filled cell for approximately four hours. *Id.* at 9. Gouveia's threat-to-safety claim in Count II against Kanakaole may also proceed.

### 2. Medical Care

To establish a claim of inadequate medical care, a prisoner must first show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (citation omitted). If a prisoner satisfies this requirement, he must then show that a prison official's response to the need was deliberately indifferent. *Id.* at 786 (citation omitted). "An inadvertent or negligent failure to provide adequate

medical care is insufficient to establish a claim under the Eighth Amendment." *Id.* (citations omitted). "To show deliberate indifference, the [prisoner] must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted).

        **a.**    **Sergeant Totau**

Gouveia alleges in Count III that Totau denied him medical care after he was moved from his cell to the recreation yard, approximately four hours after the riot began. ECF No. 16 at 10. Gouveia claims that, upon telling Totau that he was having a hard time breathing and his chest was "pretty sore," Totau responded by saying, "I have to wait for a Captain's Order." *Id.*

Gouveia fails to state a claim against Totau because he does not allege that Totau acted with deliberate indifference to a serious medical need. *See Fulcher v. Cal. Dep't of Corr.*, 297 F. App'x 645, 646 (9th Cir. 2008) ("The district court properly dismissed the deliberate indifference claim against prison medical personnel because, assuming a serious medical need, [plaintiff] failed to allege facts to establish that these defendants knew of and disregarded a serious risk of harm to [him]." (citations omitted)). Although Gouveia allegedly told Totau that he was having a hard time breathing and his chest was "pretty sore," ECF No. 16 at

12

10, Gouveia does not allege that Totau consciously disregarded an excessive risk to his health. Gouveia does not allege, for example, that Totau was aware that Gouveia had remained in his smoky cell for nearly four hours after the fire broke or that the seriousness of his medical need should have otherwise been apparent to Totau. Nor does Gouveia allege that he emphasized to Totau the urgency of his request. Indeed, it is unclear whether Gouveia is asserting that Totau ignored his request, as Gouveia does not allege that he ever renewed his request for medical care to Totau after Totau said that he needed to wait for a supervisor's approval. To the extent Gouveia claims that he requested medical care over the next two days verbally and in writing, *id.*, he does not allege that he submitted these various requests to Totau or that Totau should otherwise have been aware of them. Gouveia's denial-of-medical-care claim against Totau in Count III is DISMISSED with leave granted to amend.[5]

---

[5] Should Gouveia assert a denial-of-medical-care claim against Totau's Captain for having denied his request(s), he must clearly state so, identify the Captain, and allege facts to establish that the Captain knew of and disregarded a serious risk of harm to him. Further, to the extent Gouveia claims that prison officials at the HCF denied him medical care, ECF No. 16 at 10–11, he does not name any HCF officials as defendants. Any claims based on the medical care Gouveia received during his five days at the HCF are therefore DISMISSED with leave granted to amend.

### b. Correctional Officer Gazman

Gouveia alleges in Count IV that Correctional Officer Gazman denied him medical care after he returned to the MCCC. ECF No. 16 at 12–13. As Gazman was walking Gouveia to a cell, Gouveia told him that his urine was pink, his feces was black, and he was spitting up "blood clots." *Id.* at 12. When Gouveia asked to seek medical care, Gazman responded by allegedly saying, "I will do that for you." *Id.* Once Gouveia was in his cell, however, Gazman allegedly said, "I'm not calling anyone for you." *Id.* Gouveia's denial-of-medical-care claim against Gazman may proceed.

### D. First Amendment Claim

"It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). As the Ninth Circuit has said, the right to file prison grievances is one of the "most fundamental of the constitutional protections that prisoners retain." *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (footnote omitted).

Gouveia alleges in Count V that upon returning to the MCCC, seven days after the riot, he asked Sergeant Hedge for a grievance form. ECF No. 16 at 14. Hedge allegedly asked Gouveia why he wanted the form. *Id.* After Gouveia told Hedge that he wanted to submit a grievance based on the riot and the denial of

medical care, Hedge allegedly told Gouveia that it was "too late." *Id.* According to Gouveia, Hedge refused to provide him with a grievance form. *Id.*

To the extent Hedge told Gouveia that it was too late to submit a grievance form, that appears to be wrong. *See Kaimi v. Haw. Dep't of Pub. Safety*, Civil No. 13-00483 JMS/BMK, 2014 WL 12695694, at *2 (D. Haw. Mar. 18, 2014) (noting that Department of Public Safety ("PSD") procedures state an inmate must submit a grievance within fourteen days of the date on which the complained-of action occurred). Moreover, it appears that Gouveia was required to submit any grievance on a from obtained exclusively from the correctional facility's staff. *See Luong v. Segueira*, Civil Nos. 16-00613 LEK-KSC & 17-00563 LEK-KSC, 2018 WL 1547122, at *2 (D. Haw. Mar. 29, 2018) ("The grievance must be submitted on a Form PSD 8215, which the inmate must obtain from the facility's staff."). Gouveia's First Amendment claim against Hedge may proceed.

## IV. **CONCLUSION**

(1) Gouveia's claims for money damages against Defendants in their official capacities are DISMISSED with prejudice.

(2) Gouveia's denial-of-medical-care claims in Count III against Totau and prison officials at the HCF are DISMISSED with leave granted to amend. Gouveia may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before **April 9, 2021**.

15

(3)  If he chooses to file an amended pleading, Gouveia must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(4)  IN THE ALTERNATIVE, Gouveia may notify the Court in writing on or before **April 9, 2021**, that he elects to proceed with his threat-to-safety claims in Count I and Count II against Jackie M., Totau, and Kanakaole, his denial-of-medical-care claim in Count IV against Gazman, and his First Amendment claim in Count V against Hedge, and these claims shall be served.

If Gouveia fails to file either an amended pleading or a notice of election, the Court will direct that the First Amended Complaint be served as limited by this Order.

(5)  The Clerk is DIRECTED to send Gouveia a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading rather than immediately stand on his threat-to-safety claims in Count I and Count II against Jackie M., Totau, and Kanakaole, his

16

denial-of-medical-care claim in Count IV against Gazman, and his First Amendment claim in Count V against Hedge.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, March 9, 2021.



Jill A. Otake
United States District Judge

*Gouveia v. M., et al.*, Civil No. 20-00342 JAO-RT; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND

17